# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

DERAL W. DAVIS, )
 )
 Plaintiff, )
 )
v. ) Case No. CIV-07-312-KEW
 )
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
 )
 Defendant. )

## OPINION AND ORDER

Plaintiff Deral W. Davis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further consideration.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on March 1, 1942 and was 64 years old at the time of the ALJ's decision. Claimant's education includes approximately two years of college work. Claimant previously worked as a jailer, kitchen supervisor, and truck driver. Claimant alleges an inability to work beginning February 1, 2004 due to arthritis, swelling in the knees, high blood pressure, and hearing loss.

3

## Procedural History

On August 17, 2005, Claimant protectively filed for disability benefits under Title II of the Social Security Act (42 U.S.C. § 401, *et seq.*). His insured status expired in September of 2007. Claimant's application for benefits was denied initially and upon reconsideration. On January 30, 2007, Claimant appeared at a hearing before ALJ Kim D. Parrish in Ardmore, Oklahoma. On February 23, 2007, the ALJ issued an unfavorable decision, finding Claimant was not disabled during the relevant period. On July 25, 2007, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found Claimant was limited to sedentary work, having acquired job skills that were transferable to other jobs in the economy.

## Errors Alleged for Review

Claimant asserts the ALJ committed error by failing to properly apply the rule regarding transferable skills for a claimant closely approaching retirement age. Claimant also contends the vocational expert employed by the ALJ did not address

4

all of the requisite elements of the applicable regulations and offered testimony inconsistent with the Dictionary of Occupational Titles ("DOT"). Claimant also argues the ALJ failed to properly develop the record regarding the nature of the tasks involved in Claimant's past work in evaluating the transferability of skills derived from that past work.

## Discussion

Claimant served in the Marines between 1961 and 1969. In December of 1967, Claimant reported persistent knee pain especially when running and climbing and descending stairs. He was diagnosed with chronic synovitis and chondromalcia patellae. (Tr. 129). His prognosis was described as "guarded" with a prediction of "progressive chondromalacia of the patellae." The level of Claimant's disability in the future because of this condition was not predicted. Id. Claimant's knee condition resulted in continued treatment during his military career. However, eventually, the condition lead to his discharge from the Marines effective June 4, 1969. (Tr. 141).

On December 14, 2000, Claimant was evaluated by Dr. J. Keith Troop. Claimant complained of pain in both hands and right elbow. Dr. Troop ordered a rheumatologic study and radiographs of both knees. He found Claimant has undergone a previous surgery to his right knee and was told he would need knee replacement. (Tr. 143).

5

On April 13, 2001, Claimant presented to the Veterans Administration Medical Center in Oklahoma City, Oklahoma ("VAMC"), complaining of bilateral knee pain. Claimant weighed 288 pounds and 5' 8" tall and was described as obese. (Tr. 147). The report indicates an MRI revealed significant osteoarthritis in Claimant's knee. Id.

Claimant was attended by Dr. J.R. Turrentine on November 2, 2001 for arthritic pain in his shoulders. (Tr. 166). Claimant complained he could not pull a bow. He was taking Celebrex for the condition. Id.

Claimant presented to the emergency room on May 2, 2003, having fell on his left knee after it "gave out" in the shower. The attending physician noted some edema but no deformities or bruising in the knee. (Tr. 155-158). On May 8, 2003, Claimant again saw Dr. Turrentine, reporting his knee would not support him when he got out of his truck. He was injected in his left knee to allow him to return to work. (Tr. 165).

Claimant underwent a consultative examination on October 1, 2005 with Dr. Baha Abu-Esheh. Despite Claimant's knee, shoulder and hand conditions, Dr. Abu-Esheh found no restriction in his range of motion. Indeed, Claimant provided an affidavit with regard to the deficiencies of this examination, contending Dr. Abu-Esheh touched his neck and may have lifted both of this thighs

while he was seated. He did not disrobe and no examination of his knees occurred. The total exam was 5-10 minutes in duration. (Tr. 116).

On February 17, 2006, Claimant was again attended by Dr. Turrentine. He noted Claimant was suffering from severe pain in both knees, with his left knee being worse. Claimant stated his knees were giving way on him and he was falling. Dr. Turrentine diagnosed Claimant with hyperlipidemia, osteoarthritis in both knees, and hypertension. He recommended that Claimant have his knees x-rayed in the near future because he was "not getting around very well at all." (Tr. 162).

On September 13, 2006, Claimant went to the VAMC. He was diagnosed with osteoarthritis and obesity. (Tr. 181).

On November 1, 2006, Claimant was again diagnosed with obesity during a routine examination at the VAMC. (Tr. 179). He also was diagnosed with chronic joint pain. (Tr. 180).

In his decision, the ALJ found Claimant suffered from the severe impairments of right knee chondromalacia of the patella and internal derangement of the right knee, arthritis, swelling of the knees, high blood pressure, and "other problems." (Tr. 14). He determined Claimant could perform "at least sedentary work" limited by his inability to bend forward at the waist on more than an occasional basis or bend at the knees to come to rest on the knees

7

on more than a negligible basis. (Tr. 16).

While the ALJ found Claimant was not able to perform his past relevant work as a jailer, cook, kitchen supervisor, and truck driver, he does possess "marketable" transferable skills "with very little vocational adjustment." (Tr. 18). The ALJ relied upon the testimony of the vocational expert, Dr. Robert Sanders, which was obtained during the administrative hearing.

In determining whether a claimant has acquired skills from past employment that are transferable to other jobs, the ALJ must examine "the similarity of occupationally significant work activities between different jobs." 20 C.F.R. § 404.1568(d)(1). When an ALJ makes a finding that a claimant possesses transferable skills, he must identify the specific skills actually acquired by the claimant and the specific occupations to which those skills are transferable. Soc. Sec. R. 82-41, Dikeman v. Halter, 245 F.3d 1182, 1185 (10th Cir. 2001).

During all times relevant to this case, Claimant was over age 60 and, therefore, was considered in the category of "advanced age." 20 C.F.R. § 404.1563(d). In determining whether a claimant of advanced age who can perform sedentary work possesses transferable skills, an ALJ must find the work "is so similar to [the claimant's] previous work that [the claimant] would need to make very little, if any vocational adjustment in terms of tools,

work processes, work settings, or the industry." 20 C.F.R. § 404.1568(d)(4).

Other than employing boilerplate language in his finding that Claimant's skills were transferable "with very little vocational adjustment," the ALJ wholly fails to engage in the factual and legal analysis necessary for a finding of transferability for one in Claimant's advanced age category. Moreover, the use of the term "marketable" both in his questioning of the vocational expert and in the findings in his decision is no longer of any consequence as the use of "marketability" as a means of finding transferable skills has been eliminated from the regulations. On remand, the ALJ shall discuss in detail in his decision the similarity of the skills between Claimant's prior employment and projected employment, including any adjustment in vocational skills in the specific terms of § 404.1568(d)(4).

Additionally, any opinions offered by the vocational expert as to transferability of skills shall include specific references to similarities in duties as related in the *Dictionary of Occupational Titles* ("DOT"). Dr. Sanders appears to have assumed certain duties were included in Claimant's prior employment which were transferable to sedentary work available in the economy without evidence that such duties were, in fact, a part of his prior job, either through Claimant's testimony or the DOT. On remand, any

9

testimony elicited from the vocational expert shall rely upon these confirmable sources.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

IT IS SO ORDERED this 13th day of January, 2009.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE